SO ORDERED.

SIGNED this 27th day of June, 2019.



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>SOMPHIEN AMPHONE<br><br>        Debtor. | Case No. 18-10544<br>Chapter 7 |
| IN RE:<br><br>ILENE J. LASHINSKY,<br>United States Trustee<br><br>        Plaintiff,<br>vs.<br><br>SOMPHIEN AMPHONE,<br><br>        Defendant. | Adv. No. 18-5083 |

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND § 727 COMPLAINT**

1

A proposed amended complaint relates back to the original complaint under Fed. R. Civ. P. 15(c)(1)(B) if it asserts a claim that arises from the conduct, transactions, or occurrences set out in the original. What matters is whether the originally-pleaded claim and the new one share a "common core" of facts found in the first complaint. If they don't, and if the new claim is barred by an applicable limitation statute or rule, leave to amend must be denied as futile. Here, the United States Trustee's (UST's) original complaint objecting to discharge under § 727(a)(3) and (a)(5) only asserted facts that related to Somphien Amphone's failure to explain or to preserve records and document her prodigious gambling losses, but was silent concerning her alleged false statements in her schedules or statement of affairs or her concealing or transferring of property. Nothing in the first complaint's factual predicate would place a party on notice that she might have to defend either a § 727(a)(2) concealment claim or a § 727(a)(4)(A) false oath claim. The UST's motion to amend and add those new claims, asserted well after the Fed. R. Bankr. P. 4004(a) deadline, must therefore be denied.[1]

Factual Predicate

***Procedural Chronology***

Ms. Amphone filed her chapter 7 petition on March 30, 2018. Her § 341 meeting of creditors was first scheduled for May 1 and July 2 was set as the Rule

---

[1] The United States Trustee appeared by Christopher T. Borniger. Defendant Somphien Amphone appeared by David P. Eron. Following a June 13, 2019 hearing on the UST's motion to file amended complaint, Adv. Doc. 79, and defendant's objection thereto, Adv. Doc. 86, the Court issues this written ruling.

2

4004(a) deadline to object to discharge. Amphone filed her schedules and statement of financial affairs on April 26.

On June 22, the UST noticed Ms. Amphone for a Rule 2004 examination on July 12,[2] and a week later, requested an extension of the Rule 4004(a) deadline to August 1. The UST cited as cause her having sought additional financial information regarding Amphone's gambling debts and the upcoming Rule 2004 examination. The requested extension was unopposed and granted. No further extensions of the **August 1, 2018** Rule 4004(a) deadline were sought.

On July 31, the UST filed the initial § 727 complaint objecting to Amphone's discharge under § 727(a)(3) and (a)(5); those alleged claims dealt with Amphone's gambling activity and her scheduled unsecured gambling debt in excess of $850,000. Proceeding pro se, Amphone filed an answer to the complaint denying all allegations of the complaint.[3] As is the practice before this Court, Amphone's answer triggered the setting of a scheduling conference and a Rule 26(f) report of parties' planning meeting. On October 15, the Court approved the parties' proposed schedule for the adversary proceeding, which set a deadline of November 30, 2018 for any amendments to the pleadings and January 18, 2019 for completion of discovery. In early December, after the UST subpoenaed Amphone's accountant for a deposition (and production of documents) on December 21, Amphone's bankruptcy

---

[2] By local rule in this District, no court order is required to take a Rule 2004 examination. *See* D. Kan. LBR 2004.1(a).

[3] Amphone's counsel's Rule 2016 disclosure filed in the bankruptcy case, excluded representation of her at Rule 2004 examinations or depositions and in adversary proceedings. Those additional services provided by counsel would be billed on an hourly basis.

counsel entered his appearance in the adversary proceeding. The parties twice sought and obtained extensions of the deadlines to complete discovery, file dispositive motions, and file a final pretrial order, but never requested an extension of the **November 30, 2018** amendment deadline.[4]

On May 10, 2019, nearly a month after the discovery deadline expired and days before the final pretrial order was due, the UST filed a motion under Fed. R. Civ. P. 15(a)(2) for leave to amend its § 727 complaint to add claims under § 727(a)(2) and (a)(4), stating that discovery into the original claims "revealed evidence indicating that . . . Amphone intentionally concealed—and gave false oaths regarding—several assets and financial transactions material to her bankruptcy."[5]

### *The Original § 727 Complaint Objecting to Discharge*

As originally pled, the complaint asserted claims under § 727(a)(3)—failure to keep or preserve books or records, and § 727(a)(5)—failure to explain loss of assets. Both claims were predicated exclusively on Amphone's gambling activities. Ahead of Amphone's Rule 2004 examination, the UST reviewed her 2015 and 2016 tax returns and bank statements from several of Amphone's bank accounts,[6] alleging that in 2017 "$4 million moved among and through Amphone's bank accounts in

---

[4] *See* Adv. Doc. 44 entered January 22, 2019 (extending discovery deadline to March 1, 2019) and Adv. Doc. 73 entered March 5, 2019 (extending discovery deadline to April 15 and due date of final pretrial order to May 15). One extension was granted during the federal government shutdown that began December 22, 2018 and ran until late January 2019.
[5] Adv. Doc. 79, p. 1.
[6] Those accounts consisted of three accounts maintained solely by Amphone: Meritrust Credit Union, Wells Fargo, and Skyward Credit Union, and one account at Skyward Credit Union that Amphone was a co-signer on with her son.

4

dozens of transactions related to gambling."[7] At her Rule 2004 examination Amphone couldn't identify which gambling transactions represented winnings and which represented losses except for three properties she purchased in 2017 at tax foreclosure sales with gambling proceeds. She disposed of all gambling receipts and didn't maintain any documentation of her gambling activities.[8] These alleged facts formed the sole basis for the assertion of the § 727(a)(3) and (a)(5) claims, to-wit: "Amphone has failed to keep or preserve any recorded information from which her financial condition might by ascertained—namely, any documentation to prove her gambling winnings and losses,"[9] and "has failed to explain satisfactorily her claimed net gambling losses of $857,650," or "the funneling of $4 million through her various bank accounts . . . ."[10] The original complaint for denial of discharge complaint is undeniably tied to Amphone's gambling activity.

### *The Amended Complaint[11]*

The UST's proposed amended complaint seeks to add two new grounds for denial of discharge—§ 727(a)(2) and (a)(4). These new claims are predicated in part on information obtained in discovery through depositions of Amphone's accountant, son, and brother taken in December 2018, and March and April of 2019 and a review of bank account records and other documents produced in 2018. The alleged new facts that underlay the UST's new claims for making a false oath under §

---

[7] Adv. Doc. 1, Complaint at ¶ 23, p. 4.
[8] Complaint at §s 26-27, p. 5.
[9] Complaint, ¶ 31.
[10] Complaint, ¶s 36-37.
[11] Adv. Doc. 79, Ex. 1.

5

727(a)(4)(A) and for fraudulent concealment or transfer of property under § 727(a)(2)(A) can be summarized into three transactions or occurrences, none of which are alleged to be related to Amphone's gambling activities. Conversely, none of the factual allegations in the original complaint deal with Amphone's omission of assets and transfers on her schedules or SOFA and concealment of assets and transfers with the intent to defraud creditors.

<u>Omissions in Schedules and Statement of Financial Affairs (SOFA)</u>

Tax files produced by Amphone's accountant revealed that she received dividend income and interest income from Principal Financial Group, Inc. and Emprise Bank, respectively. Amphone's ownership of shares of Principal stock valued at nearly $7,000 nor her interest in an Emprise account were disclosed on Amphone's bankruptcy schedules or SOFA, either as an existing account or an account that had been recently closed.

<u>The Mercedes and Corvette Vehicles/Transactions with Brother</u>

In the UST's deposition of Amphone's son, he authenticated photographs depicting a 2008 Mercedes and a 2008 Chevrolet Corvette parked in Amphone's garage. It is alleged that Amphone sold and transferred title to the vehicles to her brother in March 2016, but Amphone is designated as the transfer-on-death beneficiary on the vehicle registrations. Her brother borrowed about $75,285 from Skyward Credit Union to finance the purchase of the two vehicles but gave the loan proceeds to Amphone. The next year Amphone paid off her brother's vehicle loan balances of $50,000 because she wanted to buy the cars back, but the titles were not

**6**

transferred back to her. In August of 2017 and at Amphone's request, her brother again borrowed $60,000 against the vehicles and gave the money to Amphone. Both vehicles are stored at Amphone's garage and the brother only occasionally drives them. Amphone's interest in the vehicles, the transactions, and the financial arrangements with her brother were not disclosed on her schedules or SOFA.

Loan Payments to Sister-in-Law

Amphone's Skyward Credit Union checking account shows that in the year prior to filing bankruptcy, she was making monthly payments of $1,170 to her sister-in-law, Lan Amphone, to pay back a loan. Neither these transfers nor the loan were disclosed on her schedules or SOFA.

Legal Analysis

Amendments to pleadings are governed by Fed. R. Civ. P. 15, which is applicable to adversary proceedings.[12] Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires," and the Supreme Court has admonished that this "mandate is to be heeded."[13] Still, obtaining leave to amend is not without limits. In *Foman v. Davis,* the Supreme Court recognized several reasons for denying leave to amend, including undue delay, bad faith, repeated failure to cure pleading deficiencies, undue prejudice to the defendant, and futility of the amendment.[14] Here, the timeliness and futility of the proposed amendment justify the Court's denial of leave to amend.

---

[12] Fed. R. Bankr. P. 7015.
[13] *Foman v. Davis,* 371 U.S. 178, 182 (1962).
[14] *Id.*

7

*Timeliness*

The deadline to amend pleadings proposed by the parties and approved by the Court was November 30, 2018. The UST never sought to extend the scheduling order amendment deadline, despite seeking and obtaining extensions of the other scheduling deadlines.[15] Likewise, the one-time, 30-day extension of the Rule 4004(a) deadline to object to discharge ran on August 1, 2018. The UST sought no further extension of the Rule 4004(a) deadline.[16]

After taking Amphone's Rule 2004 examination and obtaining documents, the UST apparently concluded it had enough information to proceed with an objection to discharge and filed the original complaint on July 31, 2018. The UST waited until May 10, 2019 to file its motion for leave to amend the complaint, five and one-half months after the amendment deadline expired, ten months after the Rule 4004(a) deadline expired, after discovery had closed, and a mere five days before the final pretrial order was due.[17] Under Rule 15, untimeliness or undue delay is sufficient cause for denying leave to amend without any showing of

---

[15] The scheduling order amendment deadline may be modified upon a showing of good cause under Fed. R. Civ. P. 16(b)(4). That requires a showing that the UST could not meet the scheduling deadlines despite diligent efforts. *Columbia State Bank, N.A. v. Daviscourt (In re Daviscourt),* 353 B.R. 674, 682 (10th Cir. BAP 2006).

[16] A party seeking an extension of the Rule 4004(a) deadline must file a motion *before the objection deadline expires,* must show cause, and a compelling need for the extension. Fed. R. Bankr. P. 4004(b)(1); *See In re Schepmann,* No. 18-11877, 2019 WL 1090138 (Bankr. D. Kan. Mar. 7, 2019) (denying motion to extend deadline where creditor did not exercise a reasonable degree of due diligence before resorting to extension request); *The Cadle Co. v. Riggert (In re Riggert),* 399 B.R. 453, 461-62 (Bankr. N.D. Tex. 2009) (court has no equitable power to extend the Rule 4004(a) deadline after the deadline has expired).

[17] *See In re Riggert,* 399 B.R. 453, 458-59.

8

prejudice to the other party.[18] The court considers both the length and reason for the delay. The Court is cognizant of its discretion to deny an amendment for delay, but acknowledges that the UST wasn't exactly "sitting on her hands" as she was engaged in discovery. Still, it comes after the discovery deadline, at the final pretrial order stage, and when the case is presumably ready for trial. The larger hurdle to the UST's proposed amendment, however, is futility, and is another basis upon which the Court concludes that the UST's motion for leave to amend the § 727 complaint must be denied.

*Futility*

An amendment that proposes to assert a claim that is time-barred by rule or statute of limitations is futile.[19] Here, causes of action objecting to discharge had to be filed by the Rule 4004(a) deadline of August 1, 2018. The original complaint was timely filed. The amended claims under § 727(a)(2) and (a)(4) are therefore time-barred unless application of Rule 15(c)'s relation-back doctrine saves the amended complaint.[20]

---

[18] *See Collins v. Wal-Mart, Inc.,* 245 F.R.D. 503, 512 (D. Kan. 2007).
[19] *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1311 n. 3 (10th Cir. 1999) (Rule 12(b)(6) dismissal is proper when the complaint on its face indicates noncompliance with the limitations period or existence of other affirmative defense), *overruled on other grounds, Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002); *Pedro v. Armour Swift-Eckrich,* 118 F. Supp. 2d 1155, 1158 (D. Kan. 2000) (amended complaint denied where claims time-barred by statute of limitations and did not relate back to date of original complaint); *Collins v. Wal-Mart, Inc.,* 245 F.R.D. 503, 507 (D. Kan. 2007) (An amendment that would not withstand a motion to dismiss or fails to state a claim upon which relief may be granted is futile).
[20] *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 961 (10th Cir. 2012) ("In limited circumstances, Rule 15(c) saves an otherwise untimely amendment by deeming it to "relate back" to the conduct alleged in the timely original complaint."); *Creditors' Comm. Of Gaslight Club, Inc. v. Fredricks (In re Gaslight Club, Inc.),* 167 B.R. 507, 517-18 (Bankr.

9

*Relation-back of amended complaint and newly-asserted claims*

Fed. R. Civ. P. 15(c)(1)(B) states:

An amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading;

The test for relation back is whether the original complaint gives fair notice of the general fact situation from which the claim arises.[21] As stated in *In re Commercial Fin. Servs., Inc.*—

> The United States District Court for the District of Kansas has stated that:
>> An amended complaint will not relate back if it asserts new or distinct conduct, transactions, or occurrences as the basis for relief. The purpose behind Rule 15(c) is accomplished if the original complaint gives the defendant fair notice that litigation is arising out of a specific factual situation. If the original complaint fairly discloses the general fact situation out of which the new claims arise, a defendant is not deprived of the protection of the statute of limitations.
>
> *Landis v. Correctional Corp. of America–Leavenworth,* 1999 WL 459338, at *3 (D.Kan.1999) (internal quotes and citations omitted). An amendment that adds or changes the statutory provision relied on, but

---

N.D. Ill. 1994) (Relation back can't be used to bootstrap time-barred claims where the claims are not based on the same factual allegations).

[21] *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 150 n. 3 (1984) (describing rationale of Rule 15(c) as giving notice to party of litigation concerning a particular occurrence that statutes of limitations were intended to provide); *In re Daviscourt,* 353 B.R. 674, 683 (10th Cir. BAP 2006) (concluding that amended complaint adding a § 523(a)(6) claim for diversion of $200,000 in accounts receivable proceeds from lockbox related back to the original § 523(a)(2) claim pled where the claims were at all times premised on fraudulent misrepresentation or concealment of information regarding the company's accounts receivable); *In re Perez,* 173 B.R. 284, 290 (Bankr. E.D.N.Y. 1994) (The relation-back inquiry should focus on the notice given by the general fact situation set forth in the original pleading.); *Benfield v. Mocatta Metals Corp.,* 26 F.3d 19, 23 (2d Cir.1994) (for relation back there must be sufficient commonality between facts alleged in amended and original complaints to preclude a claim of unfair surprise).

**10**

relies on the same facts to support the claim, will relate back. *Denver and Rio Grande Western R.R. v. Clint,* 235 F.2d 445, 447 (10th Cir.1956).

The courts "somewhat liberally" apply the relation back provisions of Rule 15. *Powers v. Graff,* 148 F.3d 1223, 1225–26 (11th Cir.1998). As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts. *See F.D.I.C. v. Conner,* 20 F.3d 1376, 1385–86 (5th Cir.1994); *Marsh,* 774 F. Supp. at 612. "[F]or relation back to apply, there is no additional requirement that the claim be based on an identical theory of recovery." *Bularz v. Prudential Ins. Co. of America,* 93 F.3d 372, 379 (7th Cir.1996) (citations omitted). On the other hand, amendments generally will not relate back if they interject entirely different facts, conduct, transactions or occurrences. *F.D.I.C. v. Conner,* 20 F.3d at 1385–86. It is a matter committed to the district court's sound discretion to decide whether a new claim arises out of the same transaction or occurrence. *Wilson v. Fairchild Republic Co., Inc.,* 143 F.3d 733, 738 (2nd Cir.1998).[22]

In the instant proceeding, having carefully reviewed the UST's original complaint and compared it to the proposed amended complaint, the Court concludes that the new claims for false oath or concealing or transferring property are based on different facts, conduct, and occurrences than those alleged in the original complaint.[23] The original complaint asserts facts and conduct that pertain exclusively to Amphone's gambling activities and gambling losses, and her failure to preserve records regarding her gambling activities or to explain her claimed gambling loss in

---

[22] *Commercial Financial Services, Inc. v. Temple (In re Commercial Fin. Servs., Inc.),* 294 B.R. 164, 175–76 (Bankr. N.D. Okla. 2003) (quoting *Kidwell v. Board of County Comm'rs of Shawnee County,* 40 F.Supp.2d 1201, 1217 (D.Kan.1998), *aff'd,* 189 F.3d 478 (Table), 1999 WL 500215 (10th Cir.), *cert. denied,* 528 U.S. 1064 (1999)). *See also, Mayle v. Felix,* 545 U.S. 644, 650 (2005) (relation back depends on the existence of a 'common core of operative facts' linking the original and new claims)*; Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950, 961-62.

[23] *Cf. In re Perez,* 173 B.R. 284, 293 (Bankr. E.D.N.Y. 1994) (finding that § 727(a)(4)(A) claim related back to § 727(a)(2)(A) claim originally pled and noting that omission of property from schedules may be both a false oath and a concealment).

11

excess of $857,000. In contrast, the amended complaint asserts nondisclosure or concealment of assets that Amphone has an interest in: stock ownership and a bank account (and income derived from those assets), and two vehicles that are garaged at Amphone's residence. And it alleges that Amphone has concealed or failed to disclose transfers between her and her brother related to the vehicles and her sister-in-law regarding an alleged loan. Nothing in the original complaint hints of undisclosed assets, concealment of assets or transfers, or false schedules and SOFA. In short, there is no factual nexus between the original complaint and the amended complaint and nothing in the original complaint put Amphone on notice that she might have to defend false oath or concealment claims. Accordingly, the new claims for objection to discharge under § 727(a)(2) and (a)(4) do not relate back to the original complaint and are time-barred, having been asserted after the Rule 4004(a) deadline expired.

This case is similar to *In re Lazenby*[24] and should meet the same fate—denial of leave to amend. In that case creditor Employers Mutual Casualty Company provided performance bonds on construction projects for Master Contractors. The debtor, an officer and shareholder of the construction company, agreed to indemnify and hold Employers harmless for all losses incurred in connection with the bonds. When the debtor filed chapter 7 bankruptcy, Employers filed an objection to discharge complaint and initially asserted § 727(a)(3) and (a)(5) claims relating to losses in connection with the performance bonds. After the Rule 4004(a) deadline expired, Employers learned that prior to filing bankruptcy, debtor had expressed an intention

---

[24] *Employers Mutual Casualty Co. v. Lazenby (In re Lazenby),* 253 B.R. 536 (Bankr. E.D. Ark. 2000).

to hide assets from his creditors. That discovery prompted Employers to move for leave to amend the complaint to assert a false oath claim under § 727(a)(4). The Arkansas bankruptcy court discussed its obligation to balance the liberality in permitting amendments with the strict time limitations of Rule 4004.[25] It rejected creditor's argument that the amendment should be allowed as a matter of course where the creditor discovers the fraud after expiration of the Rule 4004(a) deadline.[26] The court then analyzed the relation-back notice standard and applied it in the case before it.

> Under the [sic] this standard, it is often difficult to amend complaints to add separate theories of liability under section 727(a) because the theories of liability do require separate instances of conduct. This case is an example of such a situation. In this case, the complaint seeks to hold the debtor liable, under section 523(a), for his conduct in handling monies of a corporation of which he was an officer and shareholder. It also seeks to hold him liable under sections 727(a)(3) and (a)(5) for failing to produce his financial records and failing to account for a loss of assets. With regard to section 727(a)(5), the complaint specifically complains of the debtor's failure to explain the loss of one million dollars in contract proceeds, funneled through his corporation.[6] With regard to section 727(a)(3), the complaint simply indicates the documents were requested but not produced. In contrast, section 727(a)(4), the basis for liability sought to be added by the amendment, involves the debtor's prepetition conduct in allegedly secreting assets from his creditors and failing to disclose them, under oath, not once, but on three separate occasions.[7] Each of these theories of recovery and the facts pleaded in them constitute separate transactions or events. While it is true that this alleged conduct constitutes an egregious violation of the Bankruptcy Code and the debtor's obligations, the Court cannot construe the amendment to "relate back" if it in fact does not do so.[27]

---

[25] *Id.* at 538 (noting that the court's only authority to extend the Rule 4004 deadline is stated in the Rule itself).
[26] *Id.* at 539.
[27] *Id.* at 539-40.

**13**

So too, here, the UST's amended complaint does not relate back to the original complaint, and is therefore time-barred by Rule 4004(a). The UST's motion for leave to amend the complaint is denied on the basis of futility.

Conclusion

Having denied the UST's motion for leave to amend the complaint, the parties shall submit a final pretrial order on the original § 727(a)(3) and (a)(5) objections to discharge 28 days from entry of this Order. A final pretrial conference will be held on August 15, 2019 at 11:00 a.m. and this adversary proceeding shall be set for trial on September 17-18, 2019, the September stack docket.

# # #

14

Case 18-05083    Doc# 94    Filed 06/27/19    Page 14 of 14